UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID IRVING APEL, | No. 2:16-cv-1022-EFB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 18 & 22. For the reasons discussed below, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded to the ALJ for additional administrative proceedings.

BACKGROUND

Plaintiff filed an application for SSI, alleging that he had been disabled since June 11, 2004.[1] Administrative Record ("AR") 193-201. Plaintiff's application was denied initially and

---
[1] Plaintiff subsequently amended his alleged onset date to December 28, 2011. AR 19.

1

upon reconsideration. *Id.* at 131-134, 137-142. On March 18, 2014, a hearing was held before administrative law judge ("ALJ") Carol Eckersen. *Id.* at 36-96. Plaintiff was represented by counsel at the hearing, at which he, a vocational expert ("VE"), and two medical experts testified. *Id.*

On August 22, 2014, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[2] *Id.* at 19-31. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since December 28, 2011, the application date (20 CFR 416.920(b) and 416.971 *et seq*.).

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

\* \* \*

2. The claimant has the following severe combination of impairments: alcohol dependence, attention deficit disorder, anxiety, cervical and lumbar degenerative disc disease, chronic obstructive pulmonary disease (COPD), hepatitis C, and obesity (20 CFR 416.920(c)).

\* \* \*

3. The claimant's impairments, including the substance use disorder, meet section 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

\* \* \*

4. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

\* \* \*

5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

\* \* \*

6. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 416.967(b); the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, sit for six hours in an eight-hour workday and stand/walk for six hours in an eight-hour workday with a sit stand/option [sic], with postural limitations including occasional climbing ramps/stairs, balancing, kneeling, stooping, and no climbing ladders/ropes/scaffolds, crouching or crawling, avoid concentrated exposure to fumes and odors, hazards such as moving machinery and unprotected heights, and temperature extremes; the claimant is limited to simple, repetitive tasks in a nonpublic environment with frequent interaction with coworkers and supervisors.

\* \* \*

7. The claimant has no past relevant work (20 CFR 416.965).

\* \* \*

8. The claimant was born [in] 1964, and was 39 [sic] years old on the amended alleged onset date, which is defined as a younger individual age 19-49, and the claimant is now 50 years old, which is classified as closely approaching advanced age (20 CFR 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

10. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

11. If the claimant stopped the substance abuse, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 416.960(c) and 416.966).

\* \* \*

12. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 416.920(f) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision.

*Id.* at 21-31.

Plaintiff's request for Appeals Council review was denied on March 15, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## ANALYSIS

Plaintiff argues that the ALJ erred in (1) weighing the medical opinion evidence and (2) discrediting his subjective complaints. ECF No. 18 at 12-19

I. <u>The ALJ Erred in Weighing the Medical Opinion Evidence</u>

    A. <u>Legal Standards</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

/////

/////

/////

B.  Background

The parties reference four relevant physician opinions.[3] Dr. John Parsons was plaintiff's treating physician from July 17, 2012 to July 19, 2013. AR at 691. On July 19, 2013, Parson composed a written "Medical Assessment of Ability to Do Work-Related Activities." *Id.* at 691-92. Therein, Parsons opined that plaintiff suffered from multi-level degenerative lumbar spine "disc disease with spinal canal stenosis and foraminal stenosis." *Id.* at 691. This diagnosis was based on an October 22, 2012 lumbar spine MRI. *Id.* Parsons opined that plaintiff: (1) could lift up to five pounds frequently; (2) stand for periods of fifteen minutes for a total of two hours per day; (3) sit for period of fifteen minutes for a total of two hours per day; (4) occasionally bend, climb, balance, and stoop; and (5) never crouch, crawl, or kneel. *Id.* at 691-92. Parsons concluded that plaintiff's ability to work was affected by the fact that even lying down did not alleviate his back pain. *Id.* at 692.

In her decision, the ALJ gave little weight to Dr. Parsons' July 2013 opinion. She justified her rejection of his opinion by finding that the limitations contained therein were inconsistent with plaintiff's own statements regarding his reported daily activities. *Id.* at 26. Notwithstanding the diagnosis of "spinal canal stenosis and foraminal stenosis" as confirmed by MRI, the ALJ concluded that there was no medical evidence to support the "severity of [plaintiff's] functioning" expressed in Parsons' opinion. *Id.*

A non-examining opinion was provided at the administrative hearing by Dr. David West. *Id.* at 75-83. West opined that plaintiff would need to have a sit/stand opinion, but there is no indication from the record that he gave an opinion as to precisely how long plaintiff could sit or stand during a workday. *Id.* at 81. Dr. West did state, however, that there was nothing in the medical record to refute Dr. Parson's treating opinion that plaintiff could only stand for two hours and sit for two hours in an eight-hour workday. *Id.* at 82-83.

---

[3] The ALJ also gave substantial weight to the medical opinions of Drs. Sherman and Whitten. AR at 24, 26, 29. Sherman and Whitten, however, were tasked with opining on plaintiff's psychiatric issues. *Id.* at 85-89, 577-81. Plaintiff has stipulated that his mental impairments are not disabling and, consequently, the opinions of Sherman and Whitten are not material to the disposition of the pending motions. ECF No. 18 at 2 n. 1.

6

With respect to Dr. West, the ALJ noted that his diagnoses were wholly consistent with medical imaging and consistent "to some degree" with the overall medical record. *Id.* Consequently, she gave Dr. West's opinions on the medical imaging substantial weight. *Id.* However, she gave little weight to West's opinion that Parsons' limitations could not be refuted by the medical record. *Id.* She based this on the fact that West had "diminished the persuasiveness of his opinion by indicating that the claimant's residual functional capacities are not something he or any doctor can predict." *Id.* The ALJ also concluded that West's testimony that he could not refute Parsons' prescribed limitations was inconsistent with his earlier testimony that "examination findings were intact for reflexes and negative for straight leg raising." *Id.*

Finally, Drs. G. Taylor and Jaituni – both non-examining State agency physicians – opined that plaintiff was capable of medium work. *Id.* at 105-07, 121-23. The ALJ did not engage in significant discussion of these findings in her opinion, but did note that she had accorded them substantial weight in reaching her non-disability determination. *Id.* at 29.

C. Argument

Plaintiff argues that the ALJ erred when she decided to give little weight to Dr. Parsons' opinion and only partial weight to Dr. West's opinion. ECF No. 18 at 12-15. The court agrees.

1. Dr. Parsons

As a preliminary matter, the court must decide whether the ALJ's rejection of Parsons' opinion should be weighed under the "clear and convincing" or "specific and legitimate" standard. Plaintiff contends the former applies because Parsons' opinion was not contradicted by the opinion of another examining physician. ECF No. 18 at 14. Plaintiff cites *Lester v. Chater* for this proposition and points to its holding that the opinion of a non-examining physician cannot, standing alone, constitute substantial evidence which justifies the rejection of a treating physician's opinion. 81 F.3d at 831. Plaintiff's recitation of *Lester* is correct, but whether a non-examining opinion may serve as substantial evidence to *reject* a treating opinion is a separate question from whether it may serve to *contradict* a treating opinion. He has not cited any authority which addresses the latter proposition. To the contrary, the Ninth Circuit has held that "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Weller v. Comm'r of SSA*, 2017 U.S. Dist. LEXIS 49164, *14, 2017 WL 1191090 (D. Ariz. March 30, 2017) ("Plaintiff's reading of case law to imply that a non-examining physician's opinion is for the most part insubstantial evidence that cannot contradict a treating physician's opinions is not supported by relevant case law."). Thus, the "specific and legitimate" standard applies.

a. <u>Routine Daily Activities</u>

Turning to the merits, the ALJ primarily based her rejection of Dr. Parson's opinion on its inconsistency with plaintiff's own statements regarding his routine activities. *Id.* at 26, 28. She stated that those activities "establish a much higher level of functioning than that found by Dr. Parsons." *Id.* at 26. The ALJ pointed to plaintiff's ability to "bathe and dress himself, do some household chores, take out the garbage, pick up around the yard, go fishing and watch television." *Id.* at 27. She also emphasized his ability to prepare meals, care for his pets, do his own laundry, and go outside every day. *Id.* It is true that a conflict between a treating physician's opinion and a plaintiff's routine activities may justify the rejection of that opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). "But this principle has no application [where] . . . a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [plaintiff's] daily activities." *Id.*

A contextualized review of plaintiff's statements regarding his routine activities convinces the court that those activities were not inconsistent with Parsons' opinion. For instance, although the ALJ pointed to plaintiff's ability to prepare meals, his administrative hearing testimony on this point indicates that such preparation was not a daily activity and was limited to extremely basic dishes, like sandwiches. AR at 63-64. His meal preparation testimony is corroborated by that of his friend, Kaylan Craig, who stated that plaintiff's food preparation was limited to sandwiches, canned and frozen food, and eggs. *Id.* at 226. In her estimation, plaintiff prepared meals on an infrequent basis – "maybe once a month or once in a great while." *Id.* Similarly, plaintiff testified that his ability to do household chores was also limited – he stated that he swept "very little" and that the area he cleaned was only five feet by five feet. *Id.* at 64.

And some of the routine activities listed by the ALJ in support of her decision simply do not contradict Dr. Parsons' findings in any readily apparent way. It is unclear, for instance, how plaintiff's ability to: (1) watch some undefined amount of television; (2) go outside on a daily basis; (3) feed himself; or (4) dress himself is inconsistent with Parsons' estimation that plaintiff could work a maximum of four hours per day under the right conditions. Plaintiff is not required to establish that he is bed ridden. The Ninth Circuit has cautioned that the "Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In evaluating the consistency of routine activities with a plaintiff's ability to engage in full-time employment, it is important to bear in mind that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.* As Dr. Parsons pointed out, the spinal stenosis limited plaintiff to the point that even lying down did not alleviate his back pain. AR at 692.

          b.   Reliance on Subjective Complaints

  The ALJ also concluded that Dr. Parsons' opinion was not supported by his own objective findings, and appeared to be based primarily on plaintiff's subjective complaints of pain. AR 27-28. Specifically, the ALJ concluded that there was "scant comprehensive physical examinations of record and the few references to examination are based primarily on subjective complaint of pain and limitations secondary to subjective pain complaints." *Id.* at 28. The record simply cannot support that conclusion. Parsons indicated that his opinion was based primarily on the abnormal MRI results of plaintiff's spine taken in October 2012. *Id.* at 691-92. The ALJ acknowledged Parsons' reliance on this imaging, but erroneously asserted that Parsons' interpretation of these results was contradicted by the testimony of Dr. West. *Id.* at 28. In fact, Dr. West's conclusions aligned with Parsons'. West opined that: (1) the pain described by plaintiff was consistent with the medical record; and (2) nothing in the medical record refuted the limitations prescribed by Parsons. *Id.* at 78-79, 83.[4]

---

[4] In a footnote, the Commissioner argues that Parsons' prescribed limitations are also unreliable because plaintiff stopped seeing Parsons in January 2013, and returned around October

9

The court recognizes that an ALJ may disregard a treating physician's opinion if it is based on the subjective complaints of a claimant whose credibility has been properly discounted. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ's decision in this case does not establish that plaintiff's credibility was properly discounted, however. The ALJ did find that plaintiff's testimony regarding disabling pain was "not fully credible." AR at 27-28. In so doing, she emphasized that "[t]he objective medical evidence includes findings on imaging corroborating [plaintiff's] consistently report back pain complaints, but not supporting the severity alleged." *Id.* at 27. The Ninth Circuit has held that "[w]hile an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Indeed, this circuit has previously held that "[e]xcess pain is, by definition, pain that is unsupported by objective medical findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). In *Robbins*, the Ninth Circuit noted that an ALJ's adverse credibility finding based on the fact that the plaintiff's testimony was "not consistent with or supported by the overall medical evidence of record" was "exactly the type we have previously recognized the regulations prohibit." *Robbins*, 466 F.3d at 884. Instead, "[t]o find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." *Id.* (quoting *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792-793 (9th Cir. 1997)). For the reasons identified in the foregoing paragraphs (and those discussed in the section on plaintiff's subjective complaints to follow), the court finds that there is no inherent conflict between plaintiff's allegations of pain and the fact that he performs, in some capacity, the routine

---

2013, "asking Dr. Parsons to complete a legal questionnaire relating to his disabilities." ECF No. 22 at 7 n.7. The ALJ, however, did not rely on this reason for rejecting their treating opinions, and this court's review is limited to the rationale provided by the ALJ. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (a district court is "constrained to review the reasons the ALJ asserts").

10

activities listed by the ALJ. And nothing in the ALJ's decision indicates that she found plaintiff not credible for reasons unrelated to his subjective testimony or for internal contradictions in his testimony. Thus, the ALJ erred in discounting Dr. Parsons' findings based on the subjectivity of plaintiff's complaints of disabling pain.

                              c.        Consistency with the Record

The ALJ makes several allusions in her opinion to inconsistencies between Dr. Parsons' prescribed limitations and: (1) his own treatment notes; (2) plaintiff's conservative care; and (3) record evidence indicating that plaintiff can ambulate normally and has not suffered significant muscle weakness in his legs and arms. AR at 27-28. A review of the record does not support the ALJ's conclusion.

Parsons' treatment notes indicate that: (1) plaintiff suffers from severe lumbar spine pain; (2) that plaintiff could likely lift approximately five pounds; and (3) that plaintiff could likely work two hours in an eight hour work day if he were provided breaks every fifteen minutes to alleviate his back pain. *Id.* at 746, 751. These treatment notes are generally consistent with Parsons' previously prescribed limitations, which opined that plaintiff: (1) could lift up to five pounds frequently; (2) stand for periods of fifteen minutes for a total of two hours per day; (3) sit for period of fifteen minutes for a total of two hours per day; (4) occasionally bend, climb, balance, and stoop; and (5) never crouch, crawl, or kneel.[5] *Id.* at 691-92.

Nor does plaintiff's conservative care necessarily contradict the severity of his symptoms. The diagnosis of multi-level degenerative disc disease with spinal canal stenosis and foraminal stenosis is beyond dispute. In his treatment notes, Parsons noted that local neurosurgeons in Chico had turned down plaintiff's case after determining that it was too complex for them to handle. *Id.* at 745. Parsons indicated that he was initiating a referral to the neurosurgery department at the University of California – Davis ("UC-Davis"). *Id.* Thus, it is apparent that, although plaintiff had only undergone conservative care for his back problems, a need for surgery

---

[5] Parsons' treatment notes and prescribed limitations do reflect a two hour difference in the total work plaintiff could perform in an eight-hour workday. The court does not find this inconsistency significant, especially since the hours in the later-dated treatment notes were revised downward.

11

was clearly indicated by his treating physician. The ALJ is correct that the record does not contain any indication that plaintiff underwent neurological consult at UC Davis by the time the record was finalized. Nevertheless, Parsons' notes make clear that the process of securing a consult was ongoing and the surgery is needed. *Id.* at 764, 766.

Finally, the ALJ does not adequately explain how either plaintiff's ability to ambulate in a "satisfactory manner" or his lack of significant muscle weakness contradicts Parsons' limitations. She did not cite to any part of the record to support these medical conclusions. And, as noted above, Dr. West reviewed the medical record and found nothing to refute Parsons' opinion. *Id.* at 78-79, 83.

2. <u>Dr. West</u>

The ALJ assigned partial weight to Dr. West's testimony. She gave substantial weight to his findings regarding medical imaging after concluding that "his diagnoses were consistent with the [medical] imaging and, to some degree, consistent with the findings on examination in the medical evidence of record." *Id.* at 26. But the ALJ gave little weight to West's "medical source statement opinions." She articulated two reasons for doing so. *Id.* First, she found that the persuasiveness of West's testimony was reduced by his contention that "[plaintiff's] residual functional capacities are not something he or any doctor can predict." *Id.* Second, the ALJ faulted West for "repeat[ing] the functional abilities listed by [plaintiff], though these were more limiting that (sic) would be expected by the examination findings." *Id.* Plaintiff now argues that the ALJ erred in discounting West's opinions regarding plaintiff's pain and functional abilities. The argument is well taken. Neither rationale advanced by the ALJ for rejecting West's opinions was adequate.

West began his residual functional capacities analysis by emphasizing the consistency of plaintiff's pain testimony with his medical records. In relevant part:

> ALJ: All right. Do you have an opinion as to what the claimant's continued abilities would be? His residual functional capacities?
>
> West: I don't really have much to - - to add to what he said. He said he can lift, I believe 10 pounds on occasion and - - I'm sorry, 10 pounds frequently or 15 pounds on occasion, something like that; stand and - - I don't - - he needs to sometimes be lying - -

12

> sitting down, sometimes be standing up, and according to him he'd like to recline in a chair once in a while. I – I – I think optimally, that's a position that makes him less - - makes his back less painful. So I - - I can't disagree with what he said. It - - it kind of adds up. He has a long term problem with low-back pain. I believe he has to have back pain. I think he's gone through a lot of treatment with - - for the issue with injections and numerous studies and numerous trips to the physicians so these would all fit into the fact that I think he does have back pain, it's just that he doesn't meet the listing in my opinion on the basis of the information that I have here.
>
> ALJ: Okay. I'm sorry, may I ask, so is it your opinion - - it sounds as though you - - you are saying that [plaintiff's] testimony today is consistent with what you saw in the medical records or that it - - the medical records are supportive of what he says are his physical abilities.
>
> West: Yes, I do. That's what I'm saying.

*Id.* at 78-79. West did have a brief digression on the difficulty in predicting the course and disability of a given disease. *Id.* at 79. He stated:

> ALJ: Okay. Can you tell me when you said he needs to lie down, what would you recommend as far as how frequently he would need to lie down during an eight-hour workday?
>
> West: Well, this isn't something any doctor can really predict. If somebody breaks their arm, I can't tell you how - - how much pain they're going to have or how long it's going to be problematic to them, but predicting the course of the disease and disability of the disease is - - is very difficult. . . .

*Id.* Accounting for the subjective nature of pain should hardly be disqualifying. In *Fair* the Ninth Circuit itself noted that "[u]nlike most medical conditions capable of supporting a finding of disability, pain cannot be objectively verified or measured . . . the very existence of pain is a completely subjective phenomenon. So is the degree of pain: The amount of pain caused by a given physical impairment can vary greatly from individual to individual." 885 F.2d at 601. After emphasizing the foregoing difficulty in measuring subjectivities, however, Dr. West went on to conclude his residual functional capacities opinion:

> ALJ: I'm sorry, I didn't hear that. It broke up a little up (sic). Are you able to give a residual functional capacities opinion?
>
> West: Yes, I did. I've gone through the postural limitations climbing ramps and stairs I would say occasional; no ladders, ropes, or scaffolds would be never; balancing would be occasional; stooping, kneeling, crouching, and crawling I would say never; no

13

|   |   |
|---|---|
| 1 | problem with manipulative limitations, visual limitations, communicative limitations; as far as environmental limitations, I think he should avoid concentrated exposure to cold and heat and wetness and no problems with humidity or noise or vibration; he needs to avoid all exposure to fumes, odors, and dusts, hazards. I think he says he's fallen a couple of times with the pain in his back so he needs to avoid operating machinery where if he fell or became disabled, he would be problematic to others or himself. That's – |

    ALJ: As far - - as far as exertional limitations, would he be in the light category with lifting up to 20 pounds on an occasional basis/10 pounds on a frequent basis; standing and walking six out of eight hours; sitting six out of eight hours or would he be in a sedentary category of lift and carry up to 10 pounds frequently and occasionally; standing and walking two out of eight hours; or sitting six out of eight hours or something less than those exertional categories?

    West: I'm sorry, I thought I gave that about seden – five minutes ago, but I guess the - - I - - I guess it didn't come through. I think I said I had no problems with what he said which was that he could occasionally - - as I understood it, that he could frequently lift 10 pounds and that he could occasionally lift up to 15 pounds. So that would put him somewhere in the light to sedentary range.

    ALJ: Okay.

    West: As far as standing and walking is concerned, he wants - - he needs a sit/stand option. That's what he says and I - - I find no record – no – no – nothing to the contrary in the record against that. So he – he needs to have a sit/stand option and if he can't – he'd be more comfortable if he can lie in a chair – a reclining chair that sit/stand – that covers sitting and standing. No problems with pushing and pulling.

    ALJ: Okay. I just wanted to confirm it in the exertional terms.

    West: Oh, sorry. Yeah, okay. He – he would be in a light to sedentary range as far as the exertion is concerned.

AR at 80-82. "The weight afforded a non-examining physician's testimony depends on the degree to which they provide supporting explanations for their opinions." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008). Here, Dr. West's abstract comments on the difficulty of predicting the subjectivities of a given injury were not a valid basis for the ALJ to discount West' opinions on the medical records particular to this case.

    The court also finds fault with the ALJ's conclusion that West's acceptance of plaintiff's self-described limitations was inconsistent West's earlier testimony that "examination findings

were intact for reflexes and negative for straight leg raising." AR at 26. Critically, the ALJ provides no analysis as to why these examination findings preclude the functional capacities described by plaintiff and confirmed by West. Nor does she provide any record citation which might explain her findings. "The ALJ may not substitute his own layman's opinion for the findings and opinion of a physician." *Gonzalez Perez v. Sec'y of Health and Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). The obvious reading of West's own testimony – who, as the ALJ pointed out, acknowledged the examination findings and still concurred with plaintiff's assessment of his functional abilities - is that he did not find any inherent medical contradiction in the two. *See* AR at 79 (West stating that plaintiff's testimony was consistent with the medical record). Absent record-supported analysis as to why West's findings were contradictory, the court concludes that the ALJ erred in rejecting them on that basis. *See Sherer v. Berryhill*, No. 3:16-cv-05466 RAJ JRC, 2017 U.S. Dist. LEXIS 91636, *8 (W.D. Wash. May 9, 2017) ("When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct.").

II.     Rejection of Plaintiff's Subjective Complaints

    A.     Legal Standards

In evaluating a plaintiff's testimony regarding subjective pain or symptoms, an ALJ must follow a two-step analysis. First, she must determine whether the plaintiff has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). At the first step, "the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and

15

convincing reasons for the rejection." *Id.* "[F]or the ALJ to reject the claimant's complaints, the ALJ must provide specific, cogent reasons for the disbelief." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotations and quotation marks omitted).

B. Background

The ALJ found plaintiff not credible because she determined that: (1) the objective medical evidence did not support the severity of his allegations and (2) his daily activities established greater functioning than alleged. AR at 27.

C. Analysis

The ALJ failed to provide "specific, clear, and convincing reasons" for her rejection of plaintiff's testimony regarding the severity of his symptoms. First, the severity of his spinal issues was corroborated by the MRI screening which Dr. Parsons relied upon in setting forth his limitations. *Id.* at 691-92. Dr. West also concluded that the medical evidence was consistent with plaintiff's alleged limitations and degree of pain. *Id.* at 78-79. Thus, plaintiff offered the requisite objective medical evidence which demonstrated that he suffered from an impairment that could reasonably have caused some degree of the symptoms he alleged.

Second, this court has already concluded that plaintiff's routine activities were not inconsistent with the limitations prescribed by Dr. Parsons. In so doing, it noted that, although plaintiff engaged in a variety of routine activities, his testimony indicated that many of these activities were undertaken on a very limited basis. *Id.* at 63-65. And, as plaintiff notes in his motion, the ALJ did not articulate any findings regarding the length of time expended in the routine activities or whether the time and effort spent on those activities would be readily transferable to an employment setting. Instead, she simply listed various activities without offering a meaningful explanation as to how plaintiff's mere participation in those activities contradicted the alleged severity of his symptoms. *Id.* at 27. The Ninth Circuit has held that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

/////

16

III. Remand for Additional Administrative Proceedings

The only question that remains is whether to remand for additional administrative proceedings or for the award of benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). A court should remand for further administrative proceedings, however, unless it concludes that such proceedings would not serve a useful purpose. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016). The court cannot say that additional proceedings would have no utility in the present case. The stark contradiction in medical opinions between plaintiff's treating physician and the State agency physicians weighs in favor of additional proceedings. Additionally, the generation of additional medical evidence in the intervening years may prove enlightening. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (additional proceedings have utility where "there is a need to resolve conflicts and ambiguities, . . . or the presentation of further evidence . . . may well prove enlightening in light of the passage of time.") (internal quotations and quotation marks omitted).

## CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. This matter is remanded for additional administrative proceedings; and

4. The Clerk is directed to enter judgment in favor of plaintiff.

DATED: September 28, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

17